## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| FRANCISCO TORRES, | ) | CASE NO. 8:08CV244 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| MICHAEL J. ASTRUE, as | ) | |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

This matter comes before the Court on the denial of two applications the Plaintiff made under the Social Security Act, one for disability insurance benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401 *et seq.* (Filing No. 16, Social Security Transcript ("Tr.") at 29), and one for Supplemental Security Income ("SSI") benefits based on disability under Title XVI of the Act, 42 U.S.C. §§ 1381 *et seq.* (Tr. at 339).  Section 205(g) of the Act, 42 U.S.C. § 405(g), provides for judicial review of a final decision of the Commissioner of the Social Security Administration under Title II. Section 1631(c)(3) of the Act, 42 U.S.C. § 1383(c)(3), provides for judicial review of final decisions of the Commissioner in Title XVI claims.

## PROCEDURAL BACKGROUND

The Plaintiff, Francisco Torres ("Torres"), filed his applications under Titles II and XVI of the Act on September 22, 2004. (Tr. at 29, 339).  The Social Security Administration ("Administration") denied his applications initially on January 19, 2005 (Tr. at 36-40), and again on reconsideration. (Tr. at 41-45).  Torres then requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 50).  On September 26, 2006, a hearing was held before ALJ James Francis Gillet. (Tr. at 387).  Following the hearing, the ALJ ordered a

consultative exam. (Tr. at 430).   On April 6, 2007, Dr. Antoinette, Tribulato, M.D., completed an examination of Torres. (Tr. at 317-331).  Based on the information found in Dr. Tribulato's examination, Torres's counsel requested a supplemental hearing on May 29, 2007. (Tr. at 141).  Torres's request was not granted, however, and on October 19, 2007, the ALJ found that Torres was not under a "disability" as defined in the Act. (Tr. at 14-28).

On February 4, 2008, Torres's counsel submitted new evidence to the Administration, containing psychiatric notes and medical records from Douglas County Community Mental Health Center dating from March of 2007 to January of 2008, as well as a Mental Residual Functional Capacity Assessment completed by Stanley Kauzlarich, M.D. (Tr. at 355).  On April 10, 2008, the Appeals Council of the Administration denied Torres's request for review of the ALJ's decision. (Tr. at 6-9).  Thus, the decision of the ALJ stands as the final decision of the Commissioner.

## FACTUAL BACKGROUND

Torres was born in 1958, and he alleges an onset disability date of April 30, 2004, as the result of a work-related injury. (Tr. at 29, 195, and 399).  He alleges disability due to constant pain and back problems, including degenerative disc disease, lumbar strain, and a pinched nerve (Tr. at 29, 105, 121, and 130).  While Torres contends his onset date of disability occurred after suffering his work-related back injury in 2004, he was diagnosed with chronic back pain as early as 1997. (Tr. at 300).  Also in 1997, Dr. Frazer, a Family Practice Doctor at the University of Nebraska Medical Center, reported that Torres "hears voices." (Tr. at 300).

Prior to injuring his back, Torres had worked continuously for twenty-five years. (Tr. at 99). Over a twenty-five year period, Torres worked as a hide hanger, meat trimmer, meat boner, construction worker, machine maintenance laborer, washer, and general laborer. (Tr. at 138).

On April 30, 2004, Torres was at work, assisting with a welded steel frame that needed to be carried out of a warehouse and loaded onto a truck, when he suffered an injury and felt a pop in his low back. (Tr. at 195). When Torres reported his injury to the company doctor, the company doctor examined him and sent him back to work with "light duty restrictions." (Tr. at 155-56 and 195). Over the next month, Torres attended physical therapy and followed up with his doctors, who continued to release him to work with a variety of restrictions. (Tr. at 143-52 and 245-52).

On July 21, 2004, after physical therapy failed to relieve his back pain, Torres presented to Michael J. Morrison, M.D., at the Orthopedic Clinic. (Tr. at 162). Dr. Morrison's medical report states that an MRI revealed "a large disc herniation LF-S1 with left leg radiculopathy." (Tr. at 162). Dr. Morrison advised Torres that "if he is unable to manage his pain he will probably come to surgical intervention because of the size and extent of his disc herniation at L5-S1 on the left." (Tr. at 162). On September 2, 2004, Eric Phillips, M.D., diagnosed lumbar pain and degenerative disease at L5-S1 with foraminal stenosis and root entrapment, and discussed with Torres treatment options including steroid injections and surgery (Tr. at 186-189). On February 23, 2005, Torres's primary-care physician prescribed him medication for anxiety. (Tr. at 285).

3

Dr. Phillips referred Torres to Connie Lorenzo, M.D., and on March 16, 2005, Dr. Lorenzo examined Torres. (Tr. at 195).  Dr. Lorenzo recorded that after Torres had been released to return to work following his injury in 2004, he was fired from his employment due to an altercation he had with a co-worker. (Tr. at 195).  At that time, Torres reported feeling worse after the accident, complaining of pain primarily in his buttocks, but also in his legs, with loss of sensation in the left foot. (Tr. at 195-196).

Dr. Phillips evaluated Torres for surgery in June of 2005. (Tr. at 276-77).  An MRI of the lumbar spine showed severe-to-moderate neural foraminal stenosis and moderate degenerative disease at L5-S1, and moderate spinal stenosis at L4-L5. (Tr. at 274).  In August 2005, Dr. Phillips performed, without complications, a discectomy, a decompression, and an interbody fusion at L5-S1. (Tr. at 268-72).

On September 12, 2005, a few days after Torres was in a car accident, he sought emergency treatment for shortness of breath, stress, and anxiety. (Tr. at 201).  The emergency room physician, Scott Vozik, M.D., opined that Torres suffered from dyspnea, most likely due to his extreme level of anxiety. (Tr. at 201-202).

Four months after his surgery, in December of 2005, Torres was still experiencing a great deal of pain, as Dr. Phillips remarked that Torres had "numerous questions about why he hurts." (Tr. at 262).  On December 5, 2005, Dr. Robert Forbes, of the Nebraska Spine Center, reported that the results of a CT exam showed that Torres had solid interbody fusion with mild to moderate bilateral neural foraminal stenosis in L5-S1, and severe spinal stenosis with moderate to bilateral neural foraminal stenosis in L4-L5. (Tr. at 234).

In January of 2006, Torres's physical therapist reported that despite several months of physical therapy, Torres "rates his pain levels at a 7-8/10+," and he "continues to describe bilateral lower extremity radicular symptoms and a sensation of the left lower extremity being weak during ambulation." (Tr. at 217).

On January 30, 2006, Dr. Phillips reasoned that the December 2005 CT exam, performed by Dr. Forbes, "was erroneously interpreted as showing severe stenosis at L4-5[,]" and consequently, Dr. Phillips released Torres from his care because he concluded Torres had "achieved maximum medical improvement." (Tr. at 260).  As a result of Dr. Phillips's allegation that Dr. Forbes had erroneously interpreted the December 2005 CT exam, Dr. Forbes performed an MRI of Torres's spine on January 30, 2006. (Tr. at 256). Dr. Forbes reported that while the January 2006 MRI indicated that L4-L5 only had "[m]oderate spinal stenosis[,]" the CT exam that showed "severe spinal stenosis" in December 2005 was more accurate because "a CT myelogram would better delineate whether his level was moderate or severe spinal stenosis . . . [since it] is usually more sensitive for grading neural foraminal stenosis." (Tr. at 256).   Despite Dr. Forbes's conclusions, Dr. Phillips told Torres that there was nothing further he could do "based upon review of the C[T] scan and [the] MRI scan." (Tr. at 260).

The record indicates that, as of October of 2006, Torres was receiving psychiatric treatment at the Douglas County Community Mental Health Center ("DCCMHC"). (Tr. at 313).  After an examination in October of 2006, DCCMHC's reviewing physician reported that Torres had a GAF score of 45.[1] (Tr. at 314).  Torres continued to return to DCCMHC

---

[1] The Global Assessment of Functioning ("GAF") Scale is a rating system for reporting the clinician's judgment of the individual's overall level of functioning. *American*

for treatment each month from October of 2006 through January of 2008. (Tr. at 305-312 and 372-379).  Treatment notes from January 2007 describe Torres's anxiety and that he was "very preoccupied" with somatic complaints and had ceased taking one of his medications because the medication had only further increased his anxiety. (Tr. at 308).

During Torres's administrative hearing, the ALJ requested that Antoinette Tribulato, M.D., consultatively evaluate Torres, and, on April 6, 2007, he presented to Dr. Tribulato for an evaluation.  (Tr. at 317-325).  She reviewed the medical records and diagnosed lumbar pain, mild to moderate spinal stenosis, depression, and history of an unspecified psychiatric disorder (Tr. at 325).  Dr. Tribulato reported that Torres moved around frequently, alternating sitting and standing every 15 minutes. (Tr. at 323-24).  She noted that he complained of depression and anxiety, had a history of hearing voices, had been paranoid in the past, had trouble sleeping, and had feelings of helplessness and hopelessness. (Tr. at 322).  She stated that Torres was seeing a psychiatrist at DCCMHC who prescribed Geodon and Risperdal. (Tr. at 320).

Dr. Tribulato opined that Torres should be restricted from heavy lifting, standing for a long period of time, and sitting for a long period of time without breaks. (Tr. at 325).  On an associated medical source statement of ability to do work-related physical activities, Dr. Tribulato concluded that Torres could lift 10 pounds occasionally and frequently and carry 10 pounds frequently and 20 pounds occasionally; could only occasionally operate foot

_____

*Psychiatric Association Diagnostic and Statistical Manual of Mental Disorders*, Fourth Edition, Text Revision (DSM-IV-TR) 34 (4th ed. 2000).  A score of 50 or lower indicates "serious symptoms (e.g., suicidal ideation, severe obsession rituals, frequent shoplifting) or any serious impairment in social occupational or school functioning (e.g., no friends, inability to keep job)."  *Id*. at 34.

6

controls; and could sit, stand, and walk 8 hours in an 8-hour workday--so long as he could freely move and shift position from sitting to standing every 15 minutes. (Tr. at 326-31). The physician also opined that Torres should not stoop, kneel, crouch, or crawl, and only occasionally balance and climb stairs, ramps, ladders, or scaffolds. (Tr. at 329). Dr. Tribulato concluded that Torres should not be exposed to environments involving unprotected heights; moving mechanical parts; dust, odors, fumes, and pulmonary irritants; or be required to operate a motor vehicle (Tr. at 330). Torres could, however, be exposed to environments containing humidity, wetness, temperature extremes, and vibrations. (Tr. at 330).

During his September 28, 2006, administrative hearing, Torres testified through an interpreter that he was born in 1958, went to school through the third grade, and had traveled to work by bus. (Tr. at 398-400). He stated that he had constant burning pain from his back to his legs, even after the surgery. (Tr. at 402). Torres also testified that his left leg was weak and he did not get good sleep at night. (Tr. at 406-07). He reported a need for professional help to deal with depression and anxiety. (Tr. at 408). In response to a question from the ALJ, Torres stated: "even when I'm sitting down, I still have to support myself. I always have pain in my back and in my buttocks, and if I don't put my arms on the arm rests, my feet get numb." (Tr. at 408). At the time of the hearing, Torres's back pain was being treated with medication from his primary-care physician. (Tr. at 409).

Vocational Expert ("VE") Anita Howell testified in response to a hypothetical question posed by the ALJ that assumed an individual of Torres's age, education, inability to read English, and work history, without regard to his own subjective complaints of pain or mental impairments. (Tr. at 411 and 413-17). The individual could perform work at the

7

sedentary-exertional level; could only occasionally bend, twist, turn, crawl, stoop, squat, kneel, and climb; and could not climb ropes or ladders, use air or vibrating tools, use a motor vehicle, or push or pull repetitively with his upper or lower extremities bilaterally. (Tr. at 414).  The individual also could not work around moving machinery or at unprotected heights, and could sit for only 15 minutes at one time before needing to stand for 10 to 15 minutes. (Tr. at 414-17).  The VE testified that such an individual could not return to the Plaintiff's past relevant work but could perform the sedentary, unskilled positions of packager and assembler. (Tr. at 414-17).

On October 19, 2007, the ALJ issued his decision.  The ALJ determined that Torres had not engaged in any substantial gainful activity since April 30, 2004. (Tr. at 19).  The ALJ found that Torres had the following severe combination of impairments: foraminal stenosis at L5-S1 and degenerative disc disease with spondylosis, asthma, small bowel obstruction, and headache. (Tr. at 19).  In regards to Torres's psychiatric condition, the ALJ stated that the "claimant also has other impairments that include occasional anxiety, depression, and vision problems." (Tr. at 19).

The ALJ, however, did not find that Torres had an impairment, or combination of impairments, that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. at 20).  Thus, the ALJ found that Torres had the residual functional capacity ("RFC") to perform sedentary work, concluding that Torres can only "sit up to fifteen minutes at a time, but afterwards, needs to be allowed to stand for ten to fifteen minutes persistently throughout the workday." (Tr. at 20).

In evaluating Torres's, the ALJ did not take into consideration any of Torres's subjective complaints regarding his pain because the ALJ found his statements to be

8

inconsistent with his prior statements and the objective medical evidence in the record. (Tr. at 25).  The ALJ also cited Torres's noncompliance with treatment and medication as one of the reasons to disregard Torres's subjective statements. (Tr. at 25).  The ALJ declined to consider any of Torres's mental impairments in making the RFC determination, finding "that the lack of serious mental problems as would be expected to be documented in treatment by a mental health specialist in regular and long term counseling notes over the longitudinal period is inconsistent with the claimant's allegations." (Tr. at 26).

Finally, the ALJ determined that Torres was unable to perform any of his past relevant work. (Tr. at 27).  The ALJ found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (Tr. at 27).  The ALJ denied both of Torres's applications under the Act, concluding that Torres "has not been under a disability . . .  from April 30, 2004 through the date of this decision." (Tr. at 28).

After the ALJ issued his decision, Torres's counsel submitted new evidence to the Appeals Council, consisting of a psychiatric review technique form and mental residual functional capacity assessment completed by Sidney Kauzlarich, M.D. (Tr. at 9 and 356-71).  Dr. Kauzlarich's evaluation showed that Torres met 9 of 10 possible criteria for depressive syndrome under Listing § 12.04 for affective disorders, and had mild restriction in activities of daily living, marked difficulties in maintaining social functioning and in maintaining concentration, persistence, or pace, and had experienced four or more repeated episodes of decompensation, each of extended duration. (Tr. at 356-71).   In regards to Torres's difficulties in maintaining social functioning and his difficulties in maintaining concentration, persistence, or pace, Dr. Kauzlarich concluded that Torres's limitations were "marked." (Tr. at 366).

9

The doctor also concluded that Torres's repeated episodes of decompensation rated in the category of "extreme." (Tr. at 366).  Thus, Dr. Kauzlarich opined that Torres had a medically documented history of a chronic mental disorder and that even a minimal increase in mental demands or change in the environment would cause him to decompensate. (Tr. at 367). Dr. Kauzlarich further reasoned that Torres had marked limitations in many mental activities, including the ability to remember locations and work-like procedures, to interact appropriately with the general public, to carry out detailed instructions, to sustain a routine without special supervision, and the ability to work in close proximity with other people. (Tr. at 370-71).

On April 10, 2008, the Appeals Council of the Administration denied the Plaintiff's request for review of the ALJ's decision. (Tr. at 6-9).  As a result, the decision of the ALJ stands as the final decision of the Commissioner.

### STANDARD OF REVIEW

In reviewing a decision to deny disability benefits, a district court does not re-weigh evidence or the credibility of witnesses or revisit issues *de novo*.  *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)("As we have stated many times, we do not reweigh the evidence presented to the ALJ."); *Harris v. Shalala,* 45 F.3d 1190, 1193 (8th Cir. 1995)(holding that the district court does not "reweigh the evidence or try the issues de novo.").  Rather, the district court's role under 42 U.S.C. § 405(g) is limited to determining whether substantial evidence in the record as a whole supports the Commissioner's decision. *Id.*  Thus, the Court will uphold the Commissioner's final decision "if it is supported by substantial evidence on the record as a whole." *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008).

10

"Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Juszczyk v. Astrue*, 542 F.3d 626, 631 (8th Cir. 2008)(quoting *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). The Court must consider evidence that both detracts from, as well as supports, the Commissioner's decision. *Finch*, 547 F.3d at 935. As long as substantial evidence supports the Commissioner's decision, that decision may not be reversed merely because substantial evidence would also support a different conclusion or because a district court would decide the case differently. *Id.* ("If, after review, we find it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, we must affirm the denial of benefits.")(quoting *Mapes v. Chater*, 82 F.3d 259, 262 (8th Cir.1996)).

The Social Security Administration has promulgated a sequential process to determine whether a claimant qualifies for disability benefits. *See* 20 C.F.R. § 404.1520(a) (1998); *Cox v. Apfel,* 160 F.3d 1203, 1206 (8th Cir. 1998). Under the Commissioner's regulations, the determination involves a step-by-step analysis of the claimant's current work activity, the severity of the claimant's impairments, the claimant's RFC and his or her age, education and work experience. 20 C.F.R. § 404.1520(a); *Flanery v. Chater,* 112 F.3d 346, 349 (8th Cir. 1997). The Commissioner determines: (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment—one that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations; (4) whether the

11

claimant has the residual functional capacity to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform. *Cox*, 160 F.3d at 1206. "When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments." *Lauer v. Apfel*, 245 F.3d 700, 703 (8th Cir. 2001).

At step three of the sequential evaluation, if the claimant is found to suffer from an impairment that is listed in the Appendix to 20 C.F.R. Part 404, Subpart P ("the listings") or is equal to such a listed impairment, the claimant will be determined disabled without consideration of age, education, or work experience. *Flanery,* 112 F.3d at 349. The listings specify the criteria for impairments that are considered presumptively disabling. 20 C.F.R. §§ 404.1525(a), 404.1520(d); 20 C.F.R. Pt. 404, Subpt. P, App. 1.

## LAW & ANALYSIS

For the following reasons, the court concludes that the ALJ's decision is not supported by substantial evidence in the record. The court reverses and remands the final decision of the Commissioner for further proceedings consistent with this memorandum and order.

### I.    The Failure to Consider Plaintiff's New and Material Evidence Constitutes Reversible Error

The Court finds the final decision of the Commissioner should be reversed, and the case remanded for further proceedings so that all of Torres's evidence can be taken into consideration. On February 4, 2008, Torres's counsel submitted new evidence to the Administration, containing psychiatric notes and medical records from DCCMHC for the

12

time between March of 2007 to January of 2008, as well as a Mental Residual Functional

Capacity Assessment completed by Dr. Stanley Kauzlarich. (Tr. at 355).  Upon review of

the record and applicable law, the Court concludes that the Administration's failure to

consider Torres's newly submitted evidence constitutes reversible error.

When a claimant submits new and material evidence after the ALJ has issued his

final decision, the regulations require the Appeals Council to:

> consider the additional evidence only where it relates to the period on or
> before the date of the administrative law judge hearing decision. The
> Appeals Council shall evaluate the entire record including the new and
> material evidence submitted if it relates to the period on or before the date
> of the administrative law judge hearing decision. It will then review the case
> if it finds that the administrative law judge's action, findings, or conclusion is
> contrary to the weight of the evidence currently of record.

20 C.F.R. § 404.970(b).  The Eighth Circuit Court of Appeals has interpreted this regulation

to "mea[n] that the Appeals Council must consider evidence submitted with a request for

review 'if the additional evidence is (a) new, (b) material, and (c) relates to the period on

or before the date of the ALJ's decision." *Box v. Shalala*, 52 F.3d 168, 171 (8th Cir.

1995)(quoting *Williams v. Sullivan*, 905 F.2d 214, 216-17 (8th Cir.1990)).  Therefore, the

Appeals Council's failure to consider new, material evidence relating to the period of

disability "may be a basis for remand by a reviewing court." *Id.* (citations omitted).

In the present case, the Court concludes that Torres's evidence submitted on

February 4, 2008 (Tr. at 355) is new, material, and relates to the period on or before the

ALJ's decision.  This evidence is new because prior to Torres's February 4th submission,

the record did not contain any records documenting the psychiatric treatment and care

Torres received from DCCMHC in 2007, during the months immediately preceding the

13

ALJ's decision in October. (*Cf.* Tr. at 305-316 *with* Tr. at 355).  Furthermore, the newly submitted evidence included a Mental RFC completed by Dr. Kauzlarich. (Tr. at 355). Before February 4, 2008, the record did not contain a Mental RFC Assessment of Torres's ability to work despite his mental impairments.  Thus the Court finds that the evidence Torres submitted on February 4, 2008 (Tr. at 355) was not duplicative of any evidence in the record, but rather, constituted new evidence worthy of the Appeals Council's full consideration.

Further, the Court concludes that Torres's new evidence regarding his mental impairments is material to the ALJ's evaluation of Torres's application, because the ALJ must take Torres's mental impairments into consideration when making an RFC determination regarding his ability to work. *See Baldwin v. Barnhart*,  349 F.3d 549, 556 (8th Cir. 2003)("When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments and determine the claimant's RFC.").  This is because "RFC is defined as 'the most [a claimant] can still do despite' his or her 'physical or mental limitations.'" *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004)(citing 20 C.F.R. § 404.1545(a)).  Because the regulations require the ALJ to consider the claimant's "mental limitations" in determining the claimant's RFC, Torres's new evidence regarding his mental impairments is material to the evaluation of his applications.

Finally, the Court finds that the newly submitted evidence relates to the period on or before the ALJ's decision.  The ALJ issued his decision in October of 2007, and the newly submitted mental health records from DCCMHC relate to a time beginning  in March

14

of 2007, a full seven months before the date of the ALJ's decision. (*See* Tr. at 355).  Dr. Kauzlarich's evaluation of Torres relates to a time before the ALJ's decision, as Dr. Kauzlarich's Mental RFC Assessment concludes that Torres has had a "medically documented history of a chronic organic mental . . . disorder of at least 2 years' duration." (Tr. at 367).

Thus the Court finds that the Appeals Council committed reversible error when it failed to consider Torres's February 4, 2008, newly submitted evidence.  As a result, the Court reverses and remands the decision to the Commissioner for further proceedings consistent with these findings.

## II.     The RFC Determination is Not Supported by the Substantial Evidence in the Record

Upon review of the record and applicable law, the Court concludes that the RFC determination is not supported by the substantial evidence in the record.  The Court finds that the failure to consider both Torres's mental impairments and his subjective complaints constitutes reversible error.

RFC is defined as what the claimant "can still do despite his or her 'physical or mental limitations.'"  *Masterson*, 363 F.3d at 737 (quoting 20 C.F.R. §§ 404.1545(a)).  RFC is an assessment based on all "relevant evidence," including observations by treating or examining physicians or psychologists, family, and friends; medical records; and the claimant's own description of his limitations.  *See Pearsall v. Massanari,* 274 F.3d 1211, 1217-18 (8th Cir. 2001); 20 C.F.R. §§ 404.1545(a)-(c), 416.945(a)-(c).  "When determining whether a claimant can engage in substantial employment, an ALJ must consider the

15

combination of the claimant's mental and physical impairments and determine the claimant's RFC." *Baldwin*, 349 F.3d at 556.

"Although the ALJ bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence, we have also stated that a claimant's residual functional capacity is a *medical question.*" *Id.* (internal citations and quotations omitted) (emphasis added).   "[S]ome medical evidence must support the determination of the claimant's RFC. . . . In evaluating a claimant's RFC, the ALJ is not limited to considering medical evidence, but is required to consider at least some supporting evidence from a professional." *Id.* (internal citations and quotations omitted).

## A.      The Plaintiff's Mental Impairments

In evaluating Torres's RFC, the ALJ erred when he failed to consider fully Torres's mental impairments.   An ALJ's failure to fully consider Torres's mental limitations in combination with his physical limitations constitutes reversible error. *See id.* ("When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments and determine the claimant's RFC.")

In the present case, the ALJ listed several reasons for his decision to disregard Torres's mental illness when the ALJ made his RFC determination.  The Court concludes, however, that the listed reasons are not supported by the substantial evidence in the record.  First, the ALJ stated that "[t]he record contains very little references to any mental health problems over the longitudinal period." (Tr. at 20).  The evidence on record indicates otherwise.  Various medical records report that Torres has been hearing voices in his head

16

since as early as the mid-1980s. (Tr. at 300, 313, and 322).  The record shows that on February 23, 2005, Torres presented to a physician with the South Omaha Medical Associates, Inc., with shortness of breath due to anxiety, and the physician prescribed him a medication for anxiety. (Tr. at 285).

The record also shows that on September 12, 2005, Torres was admitted to the ER for shortness of breath due to stress and anxiety and appeared to be "extremely anxious." (Tr. at 201).  At the time of the hearing in October of 2007, the record contained all the reports of the psychiatric care Torres had received at the DCCMHC from November, 2006 until March, 2007. (*See* Tr. at 305-316).  This included the examination in October of 2006, when DCCMHC's reviewing physician reported that Torres had a GAF score of 45 (Tr. at 314), indicating a serious limitation on a claimant's ability to perform basic life tasks. *See Pate-Fires v. Astrue*, – F.3d –, 2009 WL 1212805 at *8 (8th Cir., May 6, 2009).  When Dr. Tribulato completed the consultative exam that the ALJ ordered at the September 2006 administrative hearing, she diagnosed Torres with depression and "some unspecified psychiatric disorder." (Tr. at 325).  The Court finds, therefore, that the record contains numerous references to medical health problems, and as a result, Torres's mental impairments should have been taken into consideration in the formulation of the RFC determination.

The ALJ cited Exhibit 16F as support, referring to Torres's non-compliance with his medications and treatment at DCCHMC, as well as a problem with alcohol relapse.  According to the ALJ, these findings "do not support a severe mental impairment." (Tr. at 20).  The Court, however, concludes that the substantial evidence in the record does not support this conclusion.

17

The exhibit to which the ALJ refers, Exhibit 16F, is a three-page intake form that a physician completed in October of 2006 when Torres presented himself to DCCMHC for treatment. (Tr. at 313-315).  In the entire document, the only reference to any non-compliance with treatment or alcohol abuse comes under the heading entitled "Potential Problems." (Tr. at 315).  Under the section entitled "Potential Problems," the physician completing the intake form wrote "noncompliance with meds" and "alcohol relapse." (Tr. at 315).  The fact that a physician listed these two issues as "potential problems" at the time Torres presented himself to DCCHMC for treatment does not support the conclusion that Torres was noncompliant with his treatment at DCCHMC – because, at that time, his treatment at DCCHMC had not yet commenced.

Even if this Court were to find that Exhibit 16F supports the conclusion that Torres was noncompliant with his treatment at DCCHMC, such a finding of noncompliance would not support the determination that Torres's mental impairments are not severe, or should not be taken into consideration.  This is because "federal courts have recognized a mentally ill person's noncompliance with psychiatric medications can be, and usually is, the 'result of [the] mental impairment [itself] and, therefore, neither willful nor without a justifiable excuse.'" *Pate-Fires*, 2009 WL 1212805 at *9 (quoting *Mendez v. Chater*, 943 F.Supp. 503, 508 (E.D.Pa.1996) and citing *Sharp v. Bowen*, 705 F.Supp. 1111, 1124 (W.D.Pa.1989); *Frankhauser v. Barnhart*, 403 F.Supp.2d 261, 277-78 (W.D.N.Y.2005) (holding an ALJ must take into account whether a mentally ill (bipolar and personality disordered) claimant's failure to comply with prescribed treatment results from the mental illness itself); *Brashears v. Apfel*, 73 F.Supp.2d 648 650-52 (W.D.La.1999) (remanding

18

case for consideration of whether the claimant's noncompliance with prescribed treatment was excusable due to a mental impairment)).

Thus the Court concludes there is ample evidence in the record to demonstrate that Torres suffers from mental impairments, and, as a result, these impairments must be taken into consideration when evaluating his RFC.  The Court reverses and remands the final decision of the Commissioner for further proceedings consistent with these findings.

### B.    The Plaintiff's Subjective Complaints

The Court has reviewed the final decision and finds that substantial evidence in the record does not support the determination that Torres's testimony is "not credible."  In making an RFC determination, the ALJ is required to consider the "claimant's own descriptions of his limitations." *Pearsall*, 274 F.3d at 1217-1218.  Such consideration is required unless the ALJ makes a proper credibility determination and finds that a plaintiff's statements regarding his own pain are not credible.  In the Eighth Circuit, *Polaski v. Heckler* stands as the guide for all credibility determinations:

> While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced. The adjudicator may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them.
>
> The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:

19

1. the claimant's daily activities;
2. the duration, frequency and intensity of the pain;
3. precipitating and aggravating factors;
4. dosage, effectiveness and side effects of medication;
5. functional restrictions.

The adjudicator is not free to accept or reject the claimant's subjective complaints *solely* on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.

*Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir. 1986).

Consequently, an ALJ is required to make an "express credibility determination" when discrediting a social security claimant's subjective complaints. *Lowe v. Apfel,* 226 F.3d 969, 971-72 (8th Cir. 2000). The ALJ, however, is "not required to discuss methodically each *Polaski* consideration." *Id.* at 972. Deference is generally granted to an ALJ's determination regarding the credibility of a claimant's testimony. *Dunahoo v. Apfel,* 241 F.3d 1033, 1038 (8th Cir. 2001) (stating that if an ALJ provides a "good reason" for discrediting claimant's credibility, deference is given to the ALJ's opinion, "even if every factor is not discussed in depth.").

In the present case, the Court finds that the substantial evidence on record does not support the determination that Torres's statements are not credible. In support of his conclusion that Torres's statements were not credible, the ALJ stated that "the objective record does not support his subjective complaints with signs, findings, and tests [because] the record documents only 'mild' stenosis, a 'solid' fusion, and no bulging disks." (Tr. at 25)(citing Exh. 12F/4, 7). The Eighth Circuit, however, "has repeatedly held that an ALJ 'may not disregard [a claimant's] subjective complaints solely because the objective

20

evidence does not fully support them.'" *Bastian v. Schweiker*, 712 F.2d 1278, 1281 (8th Cir. 1983)(citing *O'Leary v. Schweiker*, 710 F.2d 1334 at 1337-1339 (8th Cir.1983)).

This is particularly true in cases where the claimant complains of back pain, because a "back condition may affect one individual in an inconsequential way, whereas the same condition may severely disable another person who has a greater sensitivity to pain or whose physical condition . . . is generally deteriorated." *O'Leary*, 710 F.2d at 1342. While the ALJ notes that "the claimant did undergo surgery for the alleged back pain . . . [and] the record reflects that the surgery was generally successful in largely relieving the symptoms[,]" this Court finds that the conclusion that "the claimant is not as limited as alleged for any twelve month period of time" does not necessarily follow. (Tr. at 25). Instead, the fact that Torres underwent surgery for his ailment only further underscores the sincerity of his subjective complaints, and, although his treating physician, Dr. Phillips, concluded that the surgery went well, Torres is still  "entitled to an individualized determination of the effects of [his] condition." *O'Leary*, 710 F.2d at 1342.

In this case, the substantial evidence on record supports Torres's subjective statements regarding his back pain.  In support of the conclusion that no objective evidence on record supported Torres's subjective complaints, the ALJ cited to Dr. Phillips's January 30, 2006, medical report (Tr. at 260; Exh. 12/F/7) where Dr. Phillips stated that Dr. Forbes's previous CT scan showing "severe spinal stenosis" at L4-L5 (Tr. at 234) was "erroneously interpreted as showing severe stenosis at L4-5."  (Tr. at 260).  This not a situation where *no* evidence in the record supported Torres's subjective statements. Several objective medical reports in the record support Torres's subjective statements.

(*See* Tr. at 162, 186-189, 234, 256, 268-272, 274, 276-277, 300, 325).  This is simply a case where one physician's medical opinion (that of Dr. Phillips) seemingly contradicted Torres's statements.

In his decision the ALJ noted that there were inconsistencies in Dr. Phillips's medical opinions, and, as a result, the ALJ dismissed Dr. Phillips's medical opinion, concluding that he was "not inclined to give great weight to Dr. Phillip's [sic]  opinion." (Tr. at 24).  This Court finds that because the ALJ determined that Dr. Phillips's medical opinions in the record are inconsistent and not appropriate for consideration in making the RFC determination, the ALJ should not rely on one of Dr. Phillips's inconsistent opinions to discredit Torres's credibility.  Once an ALJ has properly discredited a treating physician's medical opinion, that physician's opinion no longer constitutes substantial evidence in the record.  Simply put, the substantial evidence in the record does not support the conclusion that no objective medical reports corroborate Torres's subjective complaints.

Finally, in dismissing Torres's subjective statements, the ALJ cited to Torres's noncompliance "in following the recommendations made by treating doctors, which suggests that the symptoms and limitations may not have been as limiting as alleged in connection with this application." (Tr. at 25)(citing Exhibit 16F/4 and SSR 82-59).  While the law supports the ALJ's reliance on noncompliance to question a claimant's credibility,[2]

---

[2] If the ALJ finds that the claimant has not been compliant with prescribed medical treatment, the ALJ is justified in disregarding the claimant's subjective testimony regarding his or her disability. *See Holley v. Massanari*, 253 F.3d 1088, 1092 (8th Cir.2001)(holding that an ALJ may consider noncompliance with medical treatment in his decision to dispense with claimant's subjective complaints); *Guziewicz v. Barnhart*, 114 Fed.Appx. 267, 269 (8th Cir. 2004)(holding that where claimant "had been noncompliant with prescribed medical treatment, including advice to quit smoking," ALJ was justified in determining that claimant's subjective statements were not credible).

the record in this case does not support the conclusion that Torres himself had been noncompliant with treatment.

In concluding that Torres had been noncompliant with his treatment, the ALJ cited only to Exhibit 16F/4 (Tr. at 308), a record from DCCMHC stating that Torres had stopped taking a medication due to an increase in his anxiety and an inability to sleep while he was on the medication. (Tr. at 308).  This record alone does not warrant the conclusion that Torres had been noncompliant with his treatment.   A mental patient's noncompliance with his prescribed treatment does not justify the dismissal of his subjective complaints because "federal courts have recognized a mentally ill person's noncompliance with psychiatric medications can be, and usually is, the 'result of [the] mental impairment [itself] and, therefore, neither willful nor without a justifiable excuse.'" *Pate-Fires*, 2009 WL 1212805 at *9 (quoting *Mendez v. Chater*, 943 F.Supp. 503, 508 (E.D.Pa.1996)(other citations omitted).

Accordingly, this Court finds that the substantial evidence on the record does not support the determination that Torres's subjective statements regarding his pain are not credible.  The Court reverses and remands the final decision of the Commissioner for further proceedings, including an RFC determination that includes consideration of both Torres's mental impairments, and his subjective statements.

### III.   The Vocational Expert's Testimony Did Not Constitute Substantial Evidence

The Court concludes that the VE's testimony at the administrative hearing did not constitute substantial evidence because it did not properly include all of Torres's impairments.  "Testimony from a vocational expert constitutes substantial evidence only

when based on a properly phrased hypothetical question.  When a hypothetical question does not encompass all relevant impairments, the vocational expert's testimony does not constitute substantial evidence." *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996)(internal citations and quotations omitted).  In the present case, the hypothetical posed to the ALJ did not include Torres's mental impairments or his subjective statements regarding his own limitations. (Tr. at 411-417).

Testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments will not be considered as support for the Commissioner's final decision. *Pickney*, 96 F.3d at 296.  If the record demonstrates that a claimant has mental impairments, the hypothetical posed to the VE must include those impairments. *Id.* at 296-297.  Because a properly posed hypothetical must include "all relevant impairments[,]" this Court also finds that any hypothetical posed to a VE should include Torres's subjective statements regarding his own limitations.

Because the hypothetical posed to the VE did not include all of Torres's limitations, the Court concludes that the VE's testimony, as it currently stands, does not constitute substantial evidence in the record.

## IV.    The Limitation on Testimony at the Administrative Hearing

At the administrative hearing, the ALJ limited counsel's cross-examination of Torres to the time between April 30, 2004, through August, 2005, stating that "the Court is of the opinion that the claimant has been disabled since April 30, 2004 through the date of his back surgery in August 2005.  I would request you confine your, your questions to that time period forward." (Tr. at 401).  The record does not support such a limitation.  Instead, the

24

evidence in the record suggests that Torres continued to suffer a disability after his surgery in August, 2005 (*see* Tr. at 234, 256, 325, and 398-409).  Torres does not maintain that he ceased to suffer from his alleged disability after his surgery in August 2005.  As a result, at the administrative hearing, his counsel should have been permitted to ask questions that related to the entire time during which Torres alleged he was disabled.

The imposition of such a restriction on testimony constituted reversible error because it was in violation of the ALJ's duty to develop the record fully. *See Brueggemann v. Barnhart*, 348 F.3d 689, 693 (8th Cir. 2003)([T]he ALJ retains the responsibility of developing a full and fair record in the non-adversarial administrative proceeding."); *Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000)("It is also well settled law that it is the duty of the ALJ to fully and fairly develop the record, even when, as in this case, the claimant is represented by counsel.").  In explaining the ALJ's duty to develop the record fully, the Eighth Circuit Court of Appeals has held that:

> Normally in Anglo-American legal practice, courts rely on the rigors of the adversarial process to reveal the true facts of a case . . .  However, social security hearings are non-adversarial . . . [Thus w]ell-settled precedent confirms that the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case . . .  The ALJ possesses no interest in denying benefits and must act neutrally in developing the record.

*Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004)(internal citations omitted).

The Court concludes that at the administrative hearing, the ALJ had a duty to develop the record fully regarding the *entire* period during which Torres alleged disability.  Any conclusions regarding whether the alleged period of disability should be enlarged or

constricted should be made *after* the record has been fully developed, in accordance with the ALJ's duty.

Because the ALJ failed to develop the record fully, the Court reverses and remands the final decision of the Commissioner for further proceedings.

**CONCLUSION**

For the aforementioned reasons, the Court reverses the final decision of the Commissioner and remands for further proceedings consistent with this memorandum and order.

ACCORDINGLY,

IT IS ORDERED:

1.   This matter is remanded to the Defendant, Commissioner of the Social Security Administration, pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum and Order; and

2.   A separate Judgment will be filed.


DATED this 28th day of May, 2009.

BY THE COURT:


s/Laurie Smith Camp
United States District Judge